```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF TENNESSEE
                     WESTERN DIVISION
```
_____

CORTNEY RICHMOND,

    Plaintiff,

vs.                                        No. 2:19-2641-SHL-dkv

SERVICE MASTER GLOBAL HOLDINGS, INC.
and
AMERICAN HOME SHIELD CORPORATION,

    Defendants.
_____

```
       REPORT AND RECOMMENDATION ON DEFENDANT'S
    MOTION TO COMPEL ARBITRATION AND DISMISS COMPLAINT
```
_____

    Before the court is the November 7, 2019 motion of the defendants, ServiceMaster Global Holdings, Inc. and American Home Shield Corporation (collectively "ServiceMaster and AHS"), to compel arbitration and dismiss the complaint, or in the alternative, to stay this litigation pending arbitration. (Mot. to Compel Arbitration, ECF No. 8.) In support of their motion, ServiceMaster and AHS filed a memorandum of facts and law, and a declaration of Thomas Courtney, AHS Vice President and General Counsel. (Mem., ECF No. 9; Courtney Decl., ECF No. 9, Ex. 1.) The *pro se* plaintiff, Cortney Richmond ("Richmond"), did not file a response in opposition. This case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as

appropriate. (Admin. Order, 2013-05, Apr. 29, 2013.) For the reasons that follow, it is recommended that the motion to compel arbitration be granted.

I. PROPOSED FINDINGS OF FACT

On September 20, 2019, Richmond filed a *pro se* complaint against ServiceMaster and AHS alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). (Compl., ECF No. 1.) Richmond paid the filing fee. (ECF No. 2.) Summons was issued as to both ServiceMaster and AHS on September 23, 2019. (*See* Summons, ECF No. 7.) On November 7, 2019, ServiceMaster and AHS filed the instant motion to compel arbitration and dismiss the complaint, or in the alternative, to stay this litigation pending arbitration, which is currently before the court. (Mot. to Compel Arbitration, ECF No. 8.)

In support of their motion to compel arbitration, ServiceMaster and AHS assert that on April 5, 2010, Richmond signed an acknowledgement of his receipt of the mandatory alternative dispute resolution program known as the ServiceMaster We Listen Dispute Resolution Plan ("We Listen Plan"). (Courtney Decl. ¶ 11,

ECF No. 9.)[1] The We Listen Plan is a comprehensive early dispute resolution program for all ServiceMaster and AHS employees that utilizes a four-step process consisting of review by human resources, further review by a committee of senior executives, mediation by a third party, and arbitration. (2016 We Listen Plan ¶ 5, ECF No. 9.) It applies to any claims that allege a violation relating to or arising from the employment relationship, including, by way of example, claims of unlawful discrimination or retaliation based on a protected category. (*Id.* ¶ 3.) All ServiceMaster and AHS employees were required to participate in the We Listen Plan after January 1, 2009, as a condition of their employment. (Courtney Decl. ¶¶ 7-10, ECF No. 9.)

## II. PROPOSED CONCLUSIONS OF LAW

A. <u>Arbitration Agreement</u>

In ruling on a motion to compel arbitration, the court must first determine whether a valid agreement to arbitrate exists. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967). Pursuant to the Federal Arbitration Act ("FAA"), 9

---

[1] At the time of Richmond's hire, "AHS was a subsidiary of The ServiceMaster Company, LLC, and an indirect subsidiary of ServiceMaster Global Holdings, Inc." (*Id.* ¶ 5.) Further, at the time of Richmond's hire, ServiceMaster utilized the January 1, 2009 version of the We Listen Plan. (*Id.* ¶ 12.) As of January 1, 2016, all ServiceMaster and AHS employees became subject to the 2016 version of the We Listen Plan. (*Id.* ¶ 13.) The 2016 version of the We Listen Plan "remained in effect through the duration of Richmond's employment. . . ." (*Id.* ¶ 14.)

U.S.C. §§ 1-307, federal law applies to a written provision in a contract "evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract." 9 U.S.C. § 2. Thus, the FAA governs any agreement to arbitrate contained in a contract relating to interstate commerce. The term "commerce" for purposes of § 2 of the FAA means "commerce among the several states or with foreign nations." *Id.* § 1. Congress intended this section to apply to all contracts within its power to regulate commerce under Art. 1 § 8, cl. 3 of the Constitution. *See Am. Airlines, Inc. v. Louisville & Jefferson Cty. Air Bd.*, 269 F.2d 811, 815-16 (6th Cir. 1959); *Tenney Eng'g Inc. v. United Elec. Radio & Mach. Workers of Am.*, 207 F.2d 450, 453 (3d Cir. 1953). Specifically excluded are contracts of "employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The Supreme Court has held that this exception "exempts from the FAA only contracts of employment of transportation workers" and not all employment contracts. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001).

In the present case, it is undisputed that AHS is engaged in interstate commerce. Because Richmond is not engaged in the movement of goods as seamen, railroad worker, or other class of worker exempted under the FAA, the We Listen Plan is not excluded from the FAA.

4

The FAA preempts state law on the issue of arbitrability in dealing with those contracts falling under the FAA. *See Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). In *Moses H. Cone*, the Supreme Court, affirming a Fourth Circuit judgment enforcing an arbitration clause, stated that the federal act governed the issue of arbitrability of the dispute between parties:

> Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.
> . . .
> The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*Id*. at 24-25.

"Section 4 of the [FAA] sets forth the procedure to be followed by a district court when presented with a motion to compel arbitration." *Winn v. Tenet Healthcare Corp.*, 2011 WL 294407, at *1 (W.D. Tenn. Jan. 27, 2011)(citing 9 U.S.C. § 4 & *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002)). In relevant part, § 4 provides as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States

5

>district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . .

9 U.S.C. § 4.

When considering a motion to compel arbitration, the district court has four tasks:

>(1) it must determine whether the parties agreed to arbitrate;
>
>(2) it must determine the scope of that agreement;
>
>(3) if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and
>
>(4) if the court concludes that some, but not all, of the claims are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Sellers v. Macy's Retail Holdings, Inc.*, 2014 WL 2826119, at *6 (W.D. Tenn. June 23, 2014)(citations omitted). In determining whether the parties agreed to arbitrate, however, ordinary state law principles governing contract formation apply. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 974 (6th Cir. 2007). While "§ 2 of the Act preempts state statutory and case law that treats arbitration agreements differently from any other contract," it also "preserves general principles of state contract

6

law as rules of decision on whether the parties have entered into an agreement to arbitrate." *Cook Chocolate Co. v. Salomon, Inc.*, 684 F. Supp. 1177, 1182 (S.D.N.Y. 1988). Thus, the court must apply Tennessee law to determine if a valid, enforceable contract exists.

Under Tennessee law, a contract must: (1) result from a meeting of the minds of the parties in mutual assent to the terms; (2) be supported by sufficient consideration; and (3) contain sufficiently definite terms. *Doe v. HCA Health Servs. of Tennessee, Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001). A signature on an arbitration agreement evidences assent. *Brubaker v. Barrett*, 801 F. Supp. 2d 743, 756-57(E.D. Tenn. 2011). Further, under Tennessee law, employment constitutes sufficient consideration to support an arbitration agreement. *See Fisher v. GE Med. Sys.*, 276 F. Supp. 2d 891, 894-95 (M.D. Tenn. 2003). Definiteness requires "sufficient explicitness" so the court "can perceive . . . the respective obligations of the parties." *Higgins v. Oil, Chem. & Atomic Workers Int'l Union, Local No. 3-677*, 811 S.W.2d 875, 880 (Tenn. 1991).

In the declaration filed by ServiceMaster and AHS, Thomas Courtney stated that on April 5, 2010, Richmond signed an acknowledgement of his receipt of the We Listen Plan pursuant to which he agreed to participate in and be bound by the terms of The We Listen Plan. (Courtney Decl. ¶ 11, ECF No. 9.) Richmond's

signature appears on the acknowledgment form. (Acknowledgment Form, ECF No. 9, Ex. A.) Thus, there is mutual assent. *Brubaker*, 801 F. Supp. 2d at 756-57. In addition, Richmond's continued employment after signing the We Listen Plan constitutes sufficient consideration. *Fisher*, 276 F. Supp. 2d at 895.

Regarding the definiteness of the terms, Paragraph One states that the We Listen Plan "includes a mutual agreement to arbitrate individual covered Disputes which is the exclusive, final and binding remedy." (2016 We Listen Plan ¶ 1, ECF No. 9.) Paragraphs Three and Four lay out in detail the disputes covered and not covered by the We Listen Plan. (*Id.* ¶¶ 3 & 4.) Paragraph Five spells out the four-step dispute resolution process and clearly states that arbitration is the last step and that the decision of the arbitrator "will be final and binding on [all parties]." (*Id.* ¶ 5.) Paragraph Six also states that Richmond "may not pursue relief for any Dispute in any federal or state court of law. . . ." (*Id.* ¶ 6.) Thus, the terms of the We Listen Plan are sufficiently definite. *Higgins*, 811 S.W.2d at 880. Accordingly, this court finds that there is a binding agreement to arbitrate.

Next, this court considers whether all of Richmond's claims in this lawsuit are covered by the arbitration agreement. Richmond's complaint asserts race and gender discrimination claims under Title VII. (Compl. ¶ 9, ECF No. 1.) The scope of the We Listen Plan is broad: It explicitly applies to all claims "arising

8

out of or relating to [Richmond's] employment . . . related to: (i) discrimination based on race, creed, color, religion, [or] sex . . .; [and] (iv) all employment related statutes, including, but not limited to, Title VII. . . ." (2016 We Listen Plan ¶ 3, ECF No. 9.)

Richmond's complaint alleges Title VII race and sex discrimination claims which relate to his employment with ServiceMaster and AHS. (Compl., ECF No. 1.) Thus, all of his claims in this lawsuit are covered and arbitrable. Furthermore, the Sixth Circuit law is clear that Title VII claims are subject to arbitration. *See EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 462 (6th Cir. 1999)(recognizing plaintiff in employment discrimination case waives his right to pursue a private cause of action by agreeing to arbitrate); *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 310 (6th Cir. 1991)(holding that claims arising under Title VII are subject to arbitration); *Terry v. Labor Ready, Inc.*, 2002 WL 1477213, at *3 (W.D. Tenn. July 2, 2002)(compelling arbitration in a Title VII case).

Because there is a binding agreement to arbitrate governed by the FAA and AHS is entitled to an order compelling arbitration, the court must determine whether to stay or dismiss this lawsuit pending arbitration. "The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration." *Green v. Ameritech Corp.*,

9

200 F.3d 967, 973 (6th Cir. 2000)(quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)); *Sellers*, 2014 WL 2826119, at *10-11 (granting motion to compel arbitration and dismissing case without prejudice). As discussed *supra*, all claims in this lawsuit are subject to arbitration; thus, this case should be dismissed without prejudice.

### III. RECOMMENDATION

For the reasons stated above, this court finds that a valid arbitration agreement exists between Richmond and ServiceMaster and AHS, that the current dispute between the parties falls within the scope of that agreement, and that Congress has not excluded any of Richmond's federal claims from arbitration. Accordingly, it is recommended that ServiceMaster and AHS's motion to compel arbitration be granted, that Richmond be required to submit his claims against ServiceMaster and AHS to the We Listen Plan, and that Richmond's lawsuit be dismissed without prejudice.

Respectfully submitted this 19th day of December, 2019.

<u>s/Diane K. Vescovo</u>
DIANE K. VESCOVO
CHIEF UNITED STATES MAGISTRATE JUDGE

### NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2).

Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.